# Howard H. Clark & Company, Limited, *v.* Warren Savings Bank, Appellant.

*Banks and banking—Checks—Acceptance—Payment—Actions—Act of May* 10, 1881, *P. L.* 17.

In Pennsylvania the holder of a check cannot maintain an action in his own name against the bank on which the check is drawn, unless the bank has accepted it.

The act of a bank in paying a check on a forged indorsement and its subsequent act of charging the check against the account of the drawer, is not an acceptance in writing signed by the acceptor within the meaning of the Act of May 10, 1881, P. L. 17, which declares "that no person within this state shall be charged as an acceptor on a bill of exchange, draft, or order drawn for the payment of money, exceeding twenty dollars, unless his acceptance shall be in writing, signed by himself or his lawful agent."

First National Bank v. Whitman, 94 U. S. 343, considered and followed; Seventh National Bank v. Cook, 73 Pa. 483, considered and distinguished.

Argued May 22, 1906. Appeal, No. 50, April T., 1906, by defendant, from judgment of C. P. Warren Co., June T., 1901, No. 36, on verdict for plaintiff in case of Howard H. Clark & Company, Limited, v. Warren Savings Bank. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit on a check. Before WILSON, P. J.

At the trial the following offer was made:

Mr. Patterson: Our case is founded on the check with the indorsement as proved, and the fact that this check has been paid to some one and it has been charged to Powers' account, and the check is offered in connection with the entire testimony that has been offered.

Objected to, for the reason that the indorsement has not been proved, and without it no right to recover on the check by anyone would appear. And object to it further as entirely immaterial and incompetent as tending in any way to establish any indebtedness of the bank to the plaintiff in this case.

Objection overruled and exception sealed for defendant. [1]

Plaintiff presented the following points:

1. If the jury believe that the defendant charged the check in suit to the account of J. H. Powers, the drawer, and in its

settlement of accounts with him obtained a credit of the amount thereof, and that John Barclay was without authority to indorse the check on the plaintiff's behalf, under all the evidence the verdict should be for the plaintiff. *Answer:* Affirmed. [9]

2. If Barclay was without authority to indorse the check, there has been no legal payment thereof, and if the jury believe the bank has charged the check to Powers' account, the verdict should be for the plaintiff. *Answer:* Affirmed. [10]

3. The receipt of the check exhausted Barclay's authority to collect, and he had no authority to indorse the check as an incident of his authority to receive the same. *Answer:* Affirmed. [11]

Defendant presented these points:

1. There is no privity of contract between the bank and the payee of an unaccepted check on such bank, and the payee of the check has no cause of action against the bank on which it is drawn until said check is accepted. *Answer:* Affirmed. [12]

2. Since the act of May 10, 1881, the acceptance of a check for more than $20.00 must be in writing, signed by party on which it is drawn or its proper officer or agent. *Answer:* The second point as applied to the evidence in this case is refused.

3. No legal or valid acceptance of the check sued on has been shown, and the verdict must be for the defendant. *Answer:* The third point is refused. [13]

Verdict and judgment for plaintiff for $98.15. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (9–13) above instructions, quoting them.

*C. W. Stone*, with him *R. W. Stone*, for appellant, cited: First Nat. Bank v. Whitman, 94 U. S. 343.

*Charles F. Patterson*, with him *Joseph A. Schofield*, for appellee, cited: Seventh Nat. Bank v. Cook, 73 Pa. 483.

OPINION BY HEAD, J., October 5, 1906:

The courts of last resort in many states of the Union have clearly held that the payee or other lawful holder of a check,

after it has been presented at the bank on which it is drawn and payment has been refused, may maintain an action directly against the bank to recover the amount thereof. In other states, our own among them, it has been just as distinctly decided that no privity of contract exists between the payee and the bank and consequently that there is no foundation to support such an action. "It may be regarded as settled that the holder of a check cannot maintain an action in his own name against the drawees, though they may have sufficient funds of the drawer, if they refuse to accept it:" Saylor v. Bushong, 100 Pa. 23. Before the plaintiffs in this action could recover, therefore, they must have shown that the bank had voluntarily departed from the position which, under the law, it occupied as a drawee merely, and had assumed towards them the attitude of an "acceptor" of a bill of exchange of which they were the payees or lawful holders. In discharge of this burden evidence was offered to prove and the verdict establishes the following facts. One Powers, being indebted to the plaintiffs, drew his check on the defendant bank for the amount of his debt and delivered it to Barclay, the collecting agent of the plaintiffs. Barclay, without the knowledge or authority of the plaintiffs, indorsed the check, presented it at the bank and secured the money it called for, which he appropriated to his own use and then absconded. At the close of the day's business the bank, assuming it had properly paid the check, stamped it with the usual pay stamp, charged it to the account of its depositor, and, in due course, when his bank book was "written up" or balanced, returned it to him with his other canceled checks. Some months later the transaction came to the knowledge of the plaintiffs, who then obtained the check from Powers, presented it at the bank and demanded payment. Upon the refusal of the bank to pay this action was begun. These facts being established, would the law of Pennsylvania—prior to the Act of May 10, 1881, P. L. 17, the effect of which we shall presently consider—conclusively presume therefrom that the bank had "accepted" the check and thus furnish the all-important foundation upon which alone the. plaintiffs' action could rest?

Were we at liberty to regard this as an open question, we would find great difficulty in rejecting the force of the reasoning

that would answer it in the negative. Payment and acceptance, in the commercial world, are essentially different things. The former is the natural, legitimate end; the latter is often but the beginning of the active career of a negotiable instrument. When a bill has been paid its mission has been fully accomplished, it is dead and useless; and this is not only the result, but the object of payment. But by acceptance there is added to its original vitality a new element of force and strength calculated to prolong its existence and widen its sphere of usefulness; and, as before, this is not a merely casual incident, but the very purpose of the act of acceptance. The two things being thus radically different it is hard to see how an attempt to pay can be construed as an intent to accept.

Moreover, the contract of a bank with its depositor is a simple one. It undertakes to safely keep his money and pay it out only upon his demand made in the manner and form sanctioned by the long-established usage of the commercial world. And the payment must be, at the peril of the bank, in exact accord with the tenor of the demand. When, therefore, a bank hands over its counters the money called for by a check to which the name of the drawer or payee has been forged, it pays out its own money and not its depositor's, because the sole condition upon which it could disburse the latter does not exist. It has attempted to pay its debt to its depositor, but the attempt has been rendered ineffectual by its own negligence or mistake, and the consequences of such error must be borne by itself; they cannot be visited upon either the depositor or payee who were in no wise responsible for it.

Convincing as this line of reasoning would seem to be when fully developed and strongly stated, as it has been by the Supreme Court of the United States in First National Bank v. Whitman, 94 U. S. 343, yet, for the purpose of determining whether or not the acts of the appellant bank amounted to an acceptance of the check, we must regard it as conclusively answered by the case of Seventh National Bank v. Cook, 73 Pa. 483. In that case, upon a state of facts precisely similar to the one now before us, our Supreme Court has declared the act of a bank, in mistakenly paying out money on a check on which the name of the payee was indorsed, by another without authority, amounted to an acceptance of the check.

"It is, in fact, an acceptance, and binds the bank as a certified check does.   'It is tantamount to an acceptance of the draft.'"

We think we may properly say, without being accused of any want of respect for the authority of the high tribunal uttering that judgment, that the opinion delivered does not disclose any satisfactory reason for the conclusion reached.   The judgment seems to be rested on a single sentence taken from the opinion of Mr. Justice DAVIS in Bank of the Republic v. Millard, 77 U. S. 152.   In that case it was distinctly held that the payee in a check, which the bank had mistakenly undertaken to pay on an unauthorized indorsement, could not maintain an action against the bank, and the judgment he had recovered in the court below was reversed.   This was the only point decided.   No question arose as to the result that would follow had the bank, later on, balanced the book of its depositor, taken credit therein for the money so paid out, and returned the check as paid and canceled to the drawer.   No such facts were presented by that record.   It is true the eminent jurist who delivered the opinion in that case uttered a carefully guarded suggestion as to the result that might flow from such facts, had they been established.   This, we think, cannot be regarded as more than dictum merely, especially in the light of the later case of First National Bank v. Whitman, supra.   In that case the exact point was raised and decided and it was again held, following Bank v. Millard to that extent, that a payee in a check could not maintain an action against the bank because the latter had paid out the money called for by the check on an unauthorized indorsement of the name of the payee.   But the case goes much farther.   The record presented the exact state of facts contemplated in the suggestion of Mr. Justice DAVIS quoted, and apparently relied on in Bank v. Cook, supra; but the court clearly held that neither the payment of the money by the bank, under such circumstances, nor the subsequent entry of the check in the depositor's book and its return to him as a canceled check, amounted to an acceptance of the check by the bank, nor did such acts disclose any intention to accept.   On the contrary, the entire conduct of the bank evidenced an intent to do a very different thing, viz., to pay the check.   The bank paid out its money on the mistaken assumption that it had before it a proper demand of its

depositor; it afterwards charged up and returned the check on a like assumption that it had actually paid the check. But these mistakes affected neither the depositor nor the payee. "It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described. This argument is based upon the erroneous assumption that the bank has paid this check. If this were true, it would have discharged all of its duty and there would be an end of the claim against it. The bank supposed it had paid the check, but this was an error . . . . Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before:" Bank v. Whitman, 94 U. S. 343.

It is clear, therefore, that the case of Seventh Nat. Bank v. Cook finds no support in the decisions of the Supreme Court of the United States in like cases. Nor has its doctrine ever received the deliberate sanction and approval of our own Supreme Court in any later case. It is true it was cited with apparent approval in Saylor v. Bushong, 100 Pa. 23, but the decision in the latter case in no wise depended on it. There the payee of a check had neglected to present it for payment for a long period of time after its receipt. During the interval the bank suspended payment. By his own negligence the payee had thus lost his right to any action against the drawer for the recovery of the debt, to satisfy which the check was given. In a subsequent settlement between the bank and its depositor, in which the latter actively participated, he expressly directed that the amount of the check should be deducted from his balance and held by the bank to await the action of the payee. Upon that state of facts the judgment in Saylor v. Bushong can be abundantly sustained on both reason and authority and the same conclusion ought to have been, doubtless would have been, reached had the case of Seventh Nat. Bank v. Cook never been decided.

Although it thus seems to stand unsupported and alone, it must still stand for us as declaratory of the law of Pennsylvania. We can neither reverse nor ignore it. We must follow it as far as it actually goes, but we are unwilling to stretch

its doctrine so as to carry us a step farther in that direction. When Bank v. Cook was decided the Act of May 10, 1881, P. L. 17, had not yet been passed. Then an acceptance by matter in pais was just as effective as one in writing signed by the acceptor. That act, however, declares " that no person within this state shall be charged, as an acceptor on a bill of exchange, draft or order drawn for the payment of money, exceeding $20.00, unless his acceptance shall be in writing, signed by himself or his lawful agent." We are now asked to say that the mistake of the bank in paying out the money without the indorsement of the payee, and its subsequent and consequent charging of the check against the account of the drawer, not only amounted to an acceptance of the check by matter in pais, but to an acceptance in writing signed by the acceptor. This we are unable and unwilling to do. To so hold would be to attempt, without warrant, to evade the clearly expressed mandate of the legislature. The case of Bank v. Cook, so often referred to, furnishes no support for the conclusion we are now asked to adopt, whilst sound reason and high authority unite to lead us in the other direction : Maginn v. Dollar Savings Bank, 131 Pa. 362; Bank v. Lindeman, 161 Pa. 199. We therefore hold that the evidence in this case wholly fails to establish that the bank ever became bound as an acceptor of the check and consequently that, in so far as this action rests on an alleged acceptance, the plaintiffs have no right to maintain it.

It is ingeniously argued, however, by the learned counsel for the appellee that " the case at bar is not an attempt to charge a person as an acceptor pro forma, but is brought on the theory that the bank, having charged the amount of the check to the drawer's account and settled with him, using the check as a voucher, holds the amount of the check for the true owner thereof." This argument plainly rests on the assumption that the bank, after having negligently paid out the money called for by the check, without the indorsement of the payee, could deplete its depositor's account by attempting to charge it to him, or could use the check as a voucher against him on a settlement after he acquired knowledge of the facts and demanded his entire balance. Such an attempt, on the part of the bank, would be wholly futile. The bank had no more right to

charge to him a check without the required indorsement than one without a signature. His balance in bank was precisely the same after the mispayment that it was before. The bank therefore held no money of which the plaintiffs could rightfully say it was money had and received for their use and benefit.

As we view the case, then, the inability of the plaintiffs to establish the material averment in their statement of claim, that the bank " did then and there accept said check," is a flat bar to their right to recover in this action, and further litigation between the parties would be unavailing. The thirteenth assignment of error is sustained and this renders any consideration of the numerous remaining assignments unnecessary.

Judgment reversed.