## Colonial Trust Company v. National Bank of Western Pennsylvania, Appellant.

*Banks and banking—Checks—Forged checks—Statutes—Repeal—Acts of April 5, 1849, P. L. 424, and May 16, 1901, P. L. 194.*

The Act of April 5, 1849, P. L. 424, which gives to a bank or anyone who has paid a forged check the right to recover the money from the person to whom it has been paid if prompt notice is given, is not repealed either expressly by the Act of May 16, 1901, P. L. 194, or by implication by sec. 62 of the act of 1901, which provides that the ac-

ceptor by accepting the instrument, engages that he will pay according to the tenor of his acceptance.  The mere payment of the forged check is not an acceptance within the meaning of sec. 62, inasmuch as sec. 132 of the act states that an acceptance within the meaning of the statute is an acceptance in writing.

Argued April 12, 1912.  Appeal, No. 27, April T., 1912, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1911, No. 296, for plaintiff on case stated in suit of Colonial Trust Company v. National Bank of Western Pennsylvania.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover back money paid on a forged check.

The check upon which the suit was brought was as follows:

"Pittsburg, Pa., Dec. 20th, 1909.   No. ........

## THE COLONIAL TRUST COMPANY,
No. 317 Fourth Ave.

PAY TO THE ORDER OF William J. Whortenstein $160.00
One Hundred Sixty...................Dollars

FOLEY BROS.

Endorsements:
William J. Whortenstein
Samuel S. Sidle.
Pay to the Order of
The National Bank of Western Penn'a
At Pittsburg, Pa.
Bentleyville National Bank,
Bentleyville, Pa.
W. B. Stephens, Cashier.
The National Bank of Western Penna.
Pittsburg, Pa.
All Prior Endorsements Guaranteed.
Jan. 26, 191
Pittsburg Clearing House
23."

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff on case stated.

*H. V. Blaxter*, of *Lazear & Blaxter*, for appellant.—It is a familiar rule of common law under the early decisions of Pennsylvania, that a bank is bound to know the signature of its depositor, and having paid a check cannot recover the money, should it develop later that the depositor's signature was forged: Price v. Neal, 3 Burr. 1354; Levy v. Bank of U. S., 1 Binney, 27.

The rule, as above contended for, is the rule that is laid down by the Pennsylvania Negotiable Instruments Law: Bank of Indian Territory v. First Nat. Bank, 109 Mo. App. 665 (83 S. W. Repr. 537); Nat. Bank of Commerce v. Nat. Bank, 148 Mo. App. 1; Nat. Bank of Rolla v. First Nat. Bank, 141 Mo. App. 719 (125 S. W. Repr. 513); Title Guarantee & Trust Co. v. Haven, 111 N. Y. Supp. 305.

*J. Rodgers McCreery*, for appellee.—The act of 1849 is in force: Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; McNeely Co. v. Bank of N. A., 221 Pa. 588.

OPINION BY HEAD, J., July 18, 1912:

The defendant bank, in the ordinary course of business, became the holder of a check on the plaintiff bank purporting to have been drawn by a depositor of the latter. The check had previously passed through the hands of several holders, each of whom had indorsed it. The defendant in turn indorsed it, guaranteed all previous indorsements, and through the clearing house presented it to the plaintiff for payment. It was paid. The case stated for the opinion of the court declares that "within a reasonable time thereafter plaintiff was informed by its said depositor that the signature of said check was a forgery, and thereupon plaintiff gave prompt and reasonable notice thereof to defendant." The defendant,

having refused to refund the money thus obtained on the forged check, this action was begun to recover it. On the facts agreed upon, the learned court below entered judgment for the plaintiff and this appeal by the defendant followed.

The learned counsel for appellant frankly concede that if sec. 10 of the act of 1849 be still in force, the judgment from which they appeal was rightly entered. Having quoted in their brief that section of the act referred to and noted some of the decisions construing and applying it, they say: "This act and these decisions change the rule of law, and under them the judgment in this case would necessarily be for the plaintiff. The concrete question now before the court is whether the act of 1901 has repealed the act of 1849; in short, whether a bank is now bound to know the signature of its depositor as it was at common law and before the act of 1849." In Iron City National Bank v. Fort Pitt National Bank, 159 Pa. 46, Mr. Justice MITCHELL, in the course of a learned and elaborate opinion on the subject, points out that at common law money paid out on a forged check or bill could only be recovered by giving notice on the same day, and that even with prompt notice, any fault or negligence of the party paying would prevent his recovery. After discussing the strictness with which that rule had been enforced in Levy v. Bank of U. S., 1 Binney, 27, the opinion thus proceeds: "The act of paying was thus held to be a conclusive estoppel without reference to any questions of negligence or delay or consequent loss to the other party. This was the kind of hardship which the act of 1849 was intended to remedy, and this is the extent of its operation in regard to a bank or other drawee paying on a forged signature of the drawer. The mere fact oi payment is no longer, eo instanti and of itself, a bar to recovery of the money, but the principles of the commercial law are still applicable, and there is still the same necessity as before, for care, diligence and proper notice under the settled rules of the law of negotiable paper."

If as early as 1849, owing to what was then considered the remarkable growth in the volume of commercial transactions, the legislature deemed it wise to enact a law relieving against the stringent demands of the common law, it ought to be difficult to reach the conclusion that after fifty years the lawmakers intended to return to the ancient policy, in the face of the fact that the hardships, arising from its enforcement, would be multiplied a thousandfold owing to the enormous increase in the volume of the commercial transactions of to-day.  Had the legislature, in passing the act of 1901, intended such a radical reversal of a long-established policy, it would not be too much to expect that it would have plainly so declared.  The latter act, however, contains no express repeal of the earlier one.  Such repeal, if it exist at all, must arise by implication merely.  That such implied repeals are not favored has been often decided: Erie v. Bootz, 72 Pa. 196; Easton Bank v. Commonwealth, 10 Pa. 442; Osborne v. Everitt, 103 Pa. 421.

The substance of the argument advanced by appellant in support of this implied repeal may be thus briefly outlined: Sec. 62 of the act of 1901 declares that: "The acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance and admits (1) the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument," etc.  That the plaintiff bank, having paid the check in question when it was presented in the manner already stated, accepted it, and thus conclusively admitted, by force of the section of the act quoted, the genuineness of the signature of the drawer.   As it is thus barred by the later statute from maintaining the action that would be authorized by the act of 1849, if still in force, the conclusion must follow that the two acts are inconsistent and repugnant in this respect, and therefore the earlier one must be held to be repealed by necessary implication.  We do not find the argument convincing.

In defining what shall constitute an acceptance within

the intendment of the statute, sec. 132 of the Act of 1901 declares: "The acceptance must be in writing and signed by the drawee," etc. This is practically the same language used by the legislature in the Act of May 10, 1881, P. L. 17, which declared that no one should be charged as an acceptor of a bill of exchange, draft or order drawn for the payment of money exceeding $20.00, unless his acceptance shall be in writing, signed by himself or his lawful agent. In Clark v. Savings Bank, 31 Pa. Superior Ct. 647, this court expressly held that the payment by a bank of a check drawn on it by a depositor, where the indorsement of the payee had been forged, was not an acceptance within the meaning of the act of 1881 referred to. In the opinion in that case we endeavored at some length to show the difference between the payment of a check by the drawee bank and the acceptance of a bill of exchange, as those terms are ordinarily used and understood in the commercial world. We have no intention of modifying the doctrine there enunciated, and if we are to recognize the principle, stare decisis, we must necessarily hold that the act of the plaintiff bank in paying the check, under the condition exhibited in the case stated, was not an acceptance of the check within the meaning of sec. 62 of the act of 1901 above quoted. It did not therefore involve a conclusive admission of the genuineness of the signature of the maker of the check and does not preclude the present plaintiff from invoking the remedy provided by the act of 1849. So far as the present plaintiff is concerned, there is no inconsistency or repugnancy between the two statutes, and both may stand.

Moreover, in Hannon v. Land Co., 44 Pa. Superior Ct. 266, we attempted to point out that although the legislature had broadly defined a check as "a bill of exchange drawn on a bank, payable on demand," it yet remained quite clear that in the legislative mind a check was but one species of a larger class or family. That various provisions of the statute concerning checks were to be found in an entirely different chapter of the act

from those belonging more particularly to bills of exchange, commonly and ordinarily so called. The only act of a bank, in the usual routine of the commercial world, which has the essential elements of an acceptance of a bill of exchange by the drawee is the certification of such check; and accordingly sec. 187 of the Negotiable Instruments Act, under the chapter relating to promissory notes and checks, declares: "Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance." If the legislature deemed it necessary to formally announce that the certification of a check, which is always in writing and signed by a representative of the bank, was to be treated as an acceptance, within the meaning of the act, how much more necessary would it have been to expressly so declare if the ordinary payment of such check on presentation, differing so widely from a certification of it, was to be regarded as an acceptance.

In the late case of McNeely Co. v. Bank of North America, 221 Pa. 588, it is true there is no evidence in the record that the question of the repeal of the act of 1849 by the Negotiable Instruments Act had been expressly raised or considered, yet it is difficult to see that the court could have used the language contained in that opinion on any other assumption than that the act of 1849 was still in full force. "The right of a bank to recover from a forger, or from those to whom it may have paid a check bearing the forged signature of one of its depositors, or a forged indorsement, is its only remedy for the fraud practiced upon it by the forgery." If the position taken by the able counsel for appellant be tenable, the bank has no remedy except against the forger, and in most cases that is no remedy at all. The number of checks paid by one of our modern city institutions in the course of a day's transactions would aggregate hundreds. If, as each one was presented, the bank officer was required, at his peril, to make a final determination of the genuineness of the signature of the maker, no

difference how skillful the forgery, the entire methods by which our immense volume of business have been successfully handled would have to be completely remodeled.

We are of opinion then that the plaintiff bank was never bound, as an acceptor of the check which it paid; that it did not by such payment conclusively admit the genuineness of the signature of the drawer; that it did not estop itself from invoking the remedy provided by the act of 1849, which is still in force, and that under the facts set forth in the case stated it had complied with every requirement of the decisions construing that law. The assignments of error are therefore overruled.

Judgment affirmed.