# Judge *v.* West Philadelphia Title & Trust Co., Appellant.

*Banks and banking—Checks—Endorsement of check—Identification—Acts of April 5, 1849, P. L. 426, and May 16, 1901, P. L. 194.*

Where a person not known to the paying teller of a bank presents for payment a check endorsed by the payee, and also by himself, and the teller refuses to cash the check unless it is endorsed by a depositor of the bank, and the person presenting the check requests a depositor to endorse it, who does so, and the proceeds are paid to the person presenting the check, the depositor who endorsed the check will be liable to the bank, if it subsequently appears that

the check was forged, and that the depositor was duly notified by the bank of this fact.

In such a case the depositor cannot defend on the ground that he merely endorsed the check for the purpose of identifying the person who presented it, if the paying teller testifies that the depositor's endorsement was required because he was to assume the responsibility for the payment of the check, and that this was definitely understood by him, and such testimony is not overcome by clear, precise and indubitable proof.

Argued Nov. 3, 1916. Appeal, No. 211, Oct. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., June T., 1913, No. 2896, on verdict for plaintiff in case of John P. Judge v. West Philadelphia Title and Trust Company. Before ORLADY, P. J., PORTER, HEAD, TREXLER and WILLIAMS, JJ. Reversed.

Assumpsit to recover the amount of two checks alleged to have been wrongfully charged to the plaintiff's account as a depositor. Before CARR, J.

At the trial it appeared that the plaintiff was a depositor in the defendant's bank, which also had a deposit account of Walter H. Hays, Secretary. Upon September 21, 1912, Zelley, who was not known to the defendant, presented for payment two checks purporting to have been drawn by Hays, Secretary, one for $300, to the order of Biesantz and endorsed by him, and the other for $150 to the order of Sullivan and endorsed by him. Zelley had also endorsed them.

W. H. Hoot, the paying teller of the defendant company, testified as follows, as to what occurred when the checks were presented:

"A.—These checks were presented at my window by Mr. Zelley, and looking them over I said, 'the man's account is good for the amount, but I don't know you, nor do I know the endorsement on the back, and before I could cash them I would have to have them endorsed by somebody who had an account here, who would be responsible for them.' He said, 'Will Mr. Judge do?' I said, 'Yes, if Mr. Judge will endorse them and assume

the responsibility, I will cash them.' He went out and came back shortly with Mr. Judge, and Mr. Judge said, 'Mr. Hoot, are these checks of Mr. Hays's any good?' I said, 'The man's account is good for the amount, but I don't know the endorsement,' and I said, 'If you will endorse them and stand for the whole thing, that is up to you, I am not familiar with the endorsement, I will cash them. The responsibility will be with you.' I have a clear recollection of making that statement.

"Q.—When Mr. Judge came in can you remember just exactly what he said to you when he came in or in effect what he said to you?

"A.—Mr. Judge wanted to know whether this man's account was good for the amount, and I said, 'Yes,' and I said, 'I want the endorsement of someone on the back there who will stand for the check.'

"Q.—What was said about the identification of Mr. Zelley?

"A.—Nothing was said as to the question of identification, to my recollection, whatever, it was a question of endorsement on the back, someone who would be responsible for the checks."

The plaintiff claimed that he endorsed the check merely for the purpose of identifying Zelley. He testified to the transaction as follows:

"We walked up to the paying teller, and I asked Mr. Hoot, the paying teller—that is Mr. Hoot sitting there—I asked him if the checks were all right, and he told me the checks were right, they had the money to pay them, but they didn't know Zelley. I told him I had known Zelley for three years and a half. 'Well,' he says, 'Put your name on these checks and identify him, and I will give him the money.' I walked to the desk and put my name on the checks and handed them to Zelley, and left."

The checks turned out to be forgeries, and of this fact Judge was notified.

The court gave binding instructions for plaintiff.

310, (1917).]     Verdict—Opinion of the Court.

Verdict and judgment for plaintiff for $524.50.   Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*Alex. Simpson,* of *Simpson, Brown & Williams,* for appellant, cited: Fulweiler v. Hughes, 17 Pa. 440; Gaul v. Willis, 26 Pa. 259; Levy v. Bank of U. S., 1 Binn 27; Commercial Nat. Bank v. Henninger, 105 Pa. 496; Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375; Young's Est., 234 Pa. 287; Wisner v. First Nat. Bank of Gallitzin, 220 Pa. 21.

*William A. Carr,* with him *John M. Hill, W. Horace Hepburn* and *Sidney L. Krauss,* for appellee, cited: Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46; Tradesmen's Nat. Bank v. Third Nat. Bank, 66 Pa. 435; Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375.

OPINION BY PORTER, J., November 19, 1917:

John P. Judge, the plaintiff, was a depositor in the defendant's bank.   Upon September 21, 1912, Zelley, who was not known to the defendant's teller, presented for payment two checks, purporting to have been drawn by Hays, Secretary, one for $300, to the order of Biesantz, and the other for $150, to the order of Sullivan, both endorsed by the payees and Zelley.   The teller refused to cash the checks unless they were endorsed by a depositor of the bank and at Zelley's request, Judge endorsed both checks.   The endorsements were unrestricted.   The bank discovered that the checks had been forged, and promptly notified the plaintiff, Judge, and charged the amount of the checks against his account. The present suit is brought by Judge to recover from the bank the amount so charged to his account.   The court below gave binding instructions for the plaintiff. In the opinion filed, it rested its conclusion upon the

interpretation of the tenth section of the Act of April 5, 1849, P. L. 426. That section reads as follows: "That whenever any value or amount shall be received as a consideration in the sale, assignment, transfer or negotiation, or in payment of any bill of exchange, draft, check, order, promissory note or other instrument, negotiable within this Commonwealth by the holder thereof, from the endorsee or endorsees, or payer or payers of the same, and the signature or signatures of any person or persons, represented to be parties thereto, whether as drawer, acceptor or endorser, shall have been forged thereon, and such value or amount by reason thereof erroneously given or paid such endorsee or endorsees, as well as such payer or payers respectively,— shall be legally entitled to recover back from the person or persons previously holding or negotiating the same, the value or amount so as aforesaid given or paid by such endorsee or endorsees or payer or payers respectively,— to such person or persons, together with lawful interest thereon from the time that demand shall have been made for repayment of the same."

Inasmuch as the money was paid to Zelley and not to Judge, the last endorser, the court held that no recovery could be had under the section above quoted; that in order to recover the party from whom the money is sought must have been the actual recipient of it; that the physical act involved in the paying of the money determined the application of the section. We think this is too narrow a construction of this act. The act declares that anyone paying money on a forged instrument may recover it back from the person or persons previously holding or negotiating the same. Any person holding or negotiating the paper is liable. The thing recoverable is the amount paid to such person or persons. The last part of the section has reference to the money paid, but it does not, we think, limit the liability of the persons previously holding or negotiating this paper. Aside from this, Judge, the last endorser, may truly be said to

have negotiated the note, as his endorsement was first
required before payment could be obtained.   When
Judge handed the endorsed checks to Zelley, Zelley was
in effect his agent to receive the money.   The situation
is analagous to that when an accommodation note is
negotiated.   It was said in Philler v. Patterson, 168 Pa.
468: "The very object of making an accommodation
note is that the person for whose accommodation it was
made may use it in the way that will best accommodate
him.   When it has been so used by the holder the accom-
modation maker or endorser is bound by the action of his
friend and becomes liable to pay the amount of the note
according to its terms."

If we turn to the Negotiable Instruments Act of May
16, 1901, P. L. 194, we are brought to the same conclusion
as to defendant's liability.   The 66th section of said act
provides:

"Every endorser who endorses without qualification
warrants to all subsequent holders in due course:

"(1) The matters and things mentioned in subdivi-
sions 1, 2 and 3 of the next preceding section; and

"(2) That the instrument is, at the time of his en-
dorsement, valid and subsisting."

Subdivisions 1, 2 and 3 of the preceding section pro-
vide that the endorser warrants:

"(1) That the instrument is genuine and in all re-
spects what it purports to be;

"(2) That he has a good title to it;

"(3) That all prior parties had capacity to contract."

In Young's Est., 234 Pa. 287 (1912), the third sylla
bus, which accurately states the decision, is as follows:

"The endorsement of a promissory note implies a
guaranty by the endorser that the maker was competent
to contract in the character in which by the terms of the
note he purported to contract.   The endorser cannot set
up the incapacity of the maker for the purpose of de-
feating his own liability."

The bank was a holder in due course.   The instrument

was complete and regular on its face, it was not overdue, the bank took it in good faith and for value and it had no notice of any infirmity in the instrument, or defect of title of the person negotiating it. Section 52, Act of 1901, supra. Protest was not required for the check was paid, and in any event, the check not appearing "on its face to be a foreign bill protest thereof in case of dishonor is unnecessary": Sec. 152, Act of May 16, 1901, supra; Wisner v. First National Bank of Gallitzin, 220 Pa. 21. The payment of the checks did not constitute an acceptance of them: Union National Bank v. Franklin National Bank, 249 Pa. 375; Clark & Co. v. Warren Savings Bank, 31 Pa. Superior Ct. 647; Colonial Trust Co. v. National Bank, 50 Pa. Superior Ct. 510. The bank promptly notified the plaintiff of the discovery of the forgery. There being no dispute as to the facts, the question of due diligence was properly a matter for the court: Marks v. Anchor Savings Bank, 252 Pa. 304; Mutual L. & S. Assn. v. National Surety Co., 257 Pa. 495.

It is contended that when Judge endorsed the check he did it merely for the purpose of identifying Zelley, and that therefore to proceed against him upon that endorsement as being an assumption of the obligation to pay the check is in the nature of a fraud against him. When we come to the examination of the testimony in this we find that Hoot, the paying teller, testified that Judge's endorsement was required because he was to assume the responsibility for the payment of the check and that this was definitely understood by him. The witness for the plaintiff testified that Judge signed for the purpose of identifying Zelley, that the paying teller stated that the account of Hays was good for the checks. Zelley states that Hoot asked Judge if he would "identify me by putting his name on the check" but when pressed said, "I don't know how, I cannot swear to that." His testimony seems to be the statement of a conclusion, not a narration of what actually transpired. The evidence of the

plaintiff is to the effect that Hoot told him he should put his name on the checks and identify Zelley, and the teller would give him the money.

Nowhere in the evidence is there any definite agreement that plaintiff's endorsement should not have its full legal effect. We think the evidence lacks that certainty which is required under our decisions. The proof of the agreement must be clear, precise and indubitable. As was stated in Thompson v. Schoch, 254 Pa. 585: "In order to sustain such defense, the evidence relied upon, taken as a whole, must be so persuasive in character, so free from self-contradiction or material internal variances, and so intrinsically probable, that the judicial mind can rest thereon with a conviction that the ends of justice would be served by giving it effect as the basis of a decree reforming the writing in suit. That is to say, the witnesses in support of the alleged contemporaneous parol contract must be credible and their examination must show them to have a distinct recollection of the relevant material facts; and, in so far as their evidence must be mutually corroborative, they should, to a reasonable degree, show a common understanding of the particular matter in question. In brief, their testimony must be clear, precise and indubitable before it can be permitted to overcome the documentary proof to which it is opposed; and, in cases of this kind, after measuring the evidence relied upon according to proper legal standards, a court should never permit a jury to do what it would not sanction if sitting as a chancellor."

The judgment is reversed and the record remitted that judgment be entered in favor of the defendant