## Chambers *et al. versus* Union National Bank.

1. An Indiana bank drew on a Philadelphia bank in favor of the cashier of a New York bank ; the draft was stolen, the name of the cashier (payee) forged as endorser and passed to defendants, October 16th, in payment of goods sold to the holder, they giving to him a check on the Philadelphia bank for the difference which was drawn, and the draft endorsed by the defendants was deposited to their credit in the same bank. After learning of the fraud, on November 2d the bank demanded payment of the draft from defendants. *Held*, that the demand was in time.

2. Under Act of April 5th 1849, the amount of the draft could be recovered back from the defendants.

3. The holder of a draft which is endorsed and passed by him, guaranties the prior endorsements.

March 29th 1875. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ.

Error to the District Court of *Philadelphia*, No. 126 : Of July Term 1873.

This was an action of assumpsit, brought December 21st 1868, by the Union National Bank against John H. Chambers and others, trading as Chambers & Cattell.

The suit was brought by the bank, plaintiff, to recover the amount of a draft upon it, in favor of C. N. Jordan, cashier, and endorsed with his name, which had been passed to the credit of the defendants and the amount drawn out by them; the endorsement being a forgery. The draft was as follows :—

[Chambers *v.* Union National Bank.]

"The First National Bank of Warsaw, Ind., October 8th 1868.

Pay to the order of C. N. Jordan, Esq., cashier, two thousand dollars.

$2000.                                    W. C. GRAVES, Cashier.

To the Union National Bank, Philadelphia.

Endorsed—Pay M. R. Rizer & Bro., or order.

C. N. JORDAN, Cashier.

M. R. RIZER & BRO.

CHAMBERS & CATTELL."

On the 15th of October 1868, a man who said he was Mr. Rizer, of the firm of M. R. Rizer & Bro., and who had been introduced by that name to defendants by Mr. Keeler, of the firm of D. S. Winebrenner & Co., bought goods from the defendants, amounting to $258.50; on the next day about nine o'clock in the morning, the man came for his bill and presented for payment the above-stated draft. Mr. Jordan, the payee, was cashier of the Third National Bank of New York; when presented to defendant the draft was endorsed, "Pay M. R. Rizer & Bro., or order. C. N. Jordan, Cashier." The man endorsed the draft, "M. R. Rizer & Bro.;" the defendants gave him a check on the plaintiff for $1741.50, the difference between the draft and the amount of the goods bought by him. After the defendants had received the draft and the man had gone away, they sent the draft with their book-keeper to the bank at its opening at ten o'clock, showed it to the paying-teller and asked if it was good; the teller said it was; he asked the book-keeper if he knew the signature "M. R. Rizer & Bro.;" the book-keeper replied, that defendants would take care of that. Some time in the after part of that day the defendants endorsed the check and deposited to their credit with the plaintiff. Their check to M. R. Rizer & Bro. for $1741.50 was drawn out and charged to defendant's account; the whole of the amount of the draft was drawn from the defendant's account. The draft itself was genuine; it had been stolen from the mail and Mr. Jordan's name on it forged.

The case was tried March 31st 1873, before Thayer, J.

In addition to the facts in the foregoing statement, there was evidence that on the 2d of November 1868, the receiving-teller of the plaintiff presented the draft to the defendants and demanded payment; the defendants refused; there was evidence also that the drafts drawn by one bank on another payable to a third, rarely get into private hands; that New York banks usually endorse by a printed stamp in blank, to be filled up in writing with the name of the endorsee and the signature of the cashier, part of the printing being, "for collection;" also that when the draft was shown by defendants' book-keeper to the teller and asked whether the draft was good, the teller said, it was good if defendants would take the

risk of M. R. Rizer & Bro., and that the book-keeper said if the draft was good they would take the risk of the Rizers ; that after the book-keeper told the defendants that the draft had been pronounced at bank good, the defendants endorsed it and directed him to deposit it with other drafts with the plaintiff. On the 5th of November defendants were informed that the draft had been stolen and the endorsement forged ; they then took the $1741.50 check, which had been returned to them on the settlement of their bank book, and told the teller that the check had been paid on a forged endorsement, and they declined to have it counted in their settlement. There was evidence also that such drafts sometimes got into private hands.

The following five points of defendants were refused :—

1. If the jury find that, at a time when notice to the defendants of any cause of suspicion in connection with the draft in evidence would have prevented loss to them, it was presented to the paying teller of the plaintiffs by the defendants, to ascertain whether it was good, and that he, though there was that in the character of the draft, and of the first endorsement thereon, which was calculated to excite his suspicion, did not mention that fact to the defendants, but said the draft was good if the defendants would take care of M. R. Rizer & Bro., and that relying on the information, defendants trusted the person claiming to be one of the Rizers, delivered the goods sold to them, and permitted the check for $1741.50 to be drawn, the plaintiffs cannot recover.

2. If the jury find that the endorsements of M. R. Rizer & Bro. on the draft and on the check were made by the same person, and that both were genuine, the assurance of the paying teller that the draft was good if the defendants would take care of Rizer & Bro., prevents their recovery in this case. If they find that both of said endorsements were forged, the plaintiffs cannot recover the $1741.50 paid out on a forged endorsement.

3. If the jury find that the endorsement of Mr. Jordan's name on the draft was not made in the usual manner, and that the draft itself was of a character very rarely put in circulation or received from private hands, it was negligence on the part of the bank to receive it without inquiry or remark, and the plaintiffs cannot recover.

4. If the plaintiffs gave no notice to the defendants that the endorsements on the draft were forged till sixteen days after it was deposited with them, the jury may, under the evidence, find that they were guilty of negligence, and, if the defendants were injured thereby, may find for them.

5. There is evidence from which the jury may find negligence on the part of the plaintiffs, which will relieve the defendants from liability to them, if the jury also find that such negligence led to the loss which will arise if the plaintiffs should recover in this case.

[Chambers *v.* Union National Bank.]

The sixth point was:—

If the plaintiffs are right in their allegation that the endorsements on the draft, which is in evidence, were forgeries, and that the amount of the draft did not properly go to the credit of defendants, this is, in effect, an action to recover back an overdraft, and, if the amount claimed was paid out on defendants' check, the plaintiffs must, before they can recover, show that the party to whom it was paid had title to the check, and that it was properly endorsed by the payee.

The court answered: If the check was paid upon a forged endorsement, by the plaintiffs, they paid it in their own wrong.

The seventh point was affirmed. It was: If the overdraft resulted from the payment, by the plaintiffs, of the check of defendants to a person who claimed under a forged endorsement, they cannot recover the amount so overdrawn.

The court, amongst other things, further charged: — * * * [" The defendants seek to rid themselves of the liability of paying back the amount of the draft by setting up negligence on the part of the plaintiffs. It would not, under the Act of Assembly, have made any difference if the paying teller had done what the defendants allege. The endorsement of Chambers & Cattell was an absolute guarantee of the genuineness of all prior endorsements. If the case ended here, I do not see how the defendants could escape liability."] * * *

" The case does not end here, but a portion of the sum for which the defendants received credit was drawn out by means of the check for $1741.50 in favor of M. R. Rizer & Bro., and if the jury find that the endorsement of their name on said check was a forgery, and that it was paid by the bank to a person not a member of the firm of M. R. Rizer & Bro., and not authorized by them to receive payment, such payment was void, and the verdict, to that extent, should be for the defendants. In other words, if the endorsement of the payee's name on the check was a forgery, the plaintiffs cannot charge the check to the defendants, for they were only justified in paying upon a genuine endorsement of M. R. Rizer & Bro."

The verdict was for the plaintiff for $2535. The defendants took a writ of error, and assigned for error the answer to their six points and the part of the charge in brackets.

The Act of 5th April 1849, Pamph. L. 420, 1 Br. Purdon 159, pl. 5, enacts that wherever any value shall be received as a consideration for, or in payment of, any bill of exchange, draft, check, promissory note, or other negotiable instrument, by the holder thereof, from the endorsee or payer of the same, and the signature of any person represented to be a party thereto, whether as drawer, acceptor or endorser, shall have been forged thereon, and such value, by reason thereof, erroneously given or paid, such

[Chambers v. Union National Bank.]

endorsee or payer respectively shall be entitled to recover back from the person previously holding or negotiating the same the amount so, as aforesaid, given or paid by such endorsee or payee to such person, with lawful interest thereon from the time of demand of repayment.

*E. S. Miller*, for plaintiffs in error.—Can the action, under its circumstances, be maintained under the Act of 1849 ? In the case of Levy *v.* Bank of the United States, 1 Binn. 27, it was held, that where a bank pays a forged check, it cannot recover it back, because it is presumed to know the handwriting of the drawer. The Act of 1849 was passed to remedy the effect of this decision, but does not apply when the parties are equally innocent : Bayard *v.* Shunk, 1 W. & S. 92 ; or where there is negligence on the part of a bank, &c., in paying : Roth *v.* Crissy, 6 Casey 145 ; Rick *v.* Kelly, Id. 527 ; Corn Exchange Nat. Bank *v.* Nat. Bank of the Republic, *postea*, p. 233. An officer of the bank said the draft was good ; this was evidence on which to base an estoppel : Elliott *v.* Callan, 1 Penna. R. 24 ; McMullin *v.* Wenner, 16 S. & R. 18. The delay in informing defendants of the forgery was too great : Thomas *v.* Todd, 3 Hill 341 ; Gloucester Bank *v.* Salem Bank, 17 Mass. R. 33.

*C. Gilpin*, for defendant in error, cited Tradesmen's Bank *v.* Third National Bank, 16 P. F. Smith 435.

Judgment was entered in the Supreme Court, April 2d, 1875,

Per Curiam.—We discover no error in this case. The draft of the First National Bank of Warsaw, Indiana, on the Union National Bank of Philadelphia, never having reached the hands of C. J. Jordan, the payee, it is evident the time lost before the discovery of the forgery of his signature was owing to no fault of the Union National Bank. Notice was given by it to Chambers & Cattell as soon as a knowledge of the fact came to the officers of the bank. In regard to the endorsement of Jordan, it is to be noticed it was a signature in the line of the title of Chambers & Cattell. The presumption is that the drawee of a bill is acquainted with the signature of the drawer, his own correspondent, and, therefore, a voluntary payment to a bonâ fide holder for value cannot be recovered back. So the law was before the Act of 5th April 1849, 16 P. F. Smith 435. But surely the drawee is not to be supposed to know all the endorsements on the bill down to that of him who presents it for payment. There might be half a dozen endorsements of distinct persons entirely unknown to the bank, and certainly the holder must guaranty them to the bank, and not *vice versa.* We see no error in the way the case was submitted to the jury.                          Judgment affirmed.