## Iron City Nat. Bank *v.* Fort Pitt Nat. Bank, Appellant.

*Banks and banking—Checks—Forgery—Act of April 5, 1849.*

Under the act of April 5, 1849, P. L. 426, the mere acceptance or payment of forged paper is no longer of itself a bar to the recovery of the money by the party paying, even though it be a bank or other drawee, nor is such party absolutely bound as at common law to discover and give notice of the forgery on the very day of payment. All that he need do in any case is to give notice promptly according to the circumstances and usage of the business, and, unless the position of the party using the money has been altered for the worse in the meantime, it would seem that the date of notice is not material. But on the other hand the statute does not dispense with the necessity of care and diligence on the part of the payer nor exempt him from the consequences of his own negligence, if thereby loss would accrue to the other party.

Plaintiff, a bank, received a check on Dec. 19th, paid it, entered it on its books, and then dismissed it from further attention. Five days afterwards plaintiff's attention was called to the check, and an investigation was made which resulted in the discovery that the drawer's name had been forged. In the meantime defendant, a bank, which had received the money, paid it out. *Held,* that plaintiff was guilty of want of due diligence, and was not entitled to recover back the money.

Argued Oct. 24, 1893. Appeal, No. 86, Oct. T., 1893, by defendant, from order of C. P. No. 3, Allegheny Co., Feb. T., 1893, making absolute rule for judgment for want of sufficient affidavit of defence. Before Sterrett, C. J., Green, McCollum, Mitchell and Thompson, JJ.

Assumpsit to recover back money paid on forged check.

Plaintiffs' statement averred that on Dec. 19, 1892, defend-

ant was the holder of a certain check or bill of exchange, dated Dec. 17, 1892, purporting to be drawn by the firm of G. Dice & Co. on the Iron City National Bank of Pittsburgh for the sum of $852. This check, on Dec. 17, 1892, was deposited by the payees thereof, Messrs. Gutman & Howard, with defendant bank. Defendant was not then a member of the Pittsburgh Clearing House Association of Banks, but it cleared through the Citizens' National Bank of Pittsburgh. Defendant indorsed the check and delivered it to the Citizens' National Bank as its agent, and the Citizens' National Bank, acting as agent of defendant bank, presented the check on Dec. 19, 1892, to the Iron City National Bank of Pittsburgh for payment, and the Iron City National Bank paid the check to the Citizens' National Bank, acting as agent of defendant bank, and the sum so paid, $852, was placed to the credit of defendant bank by its said agent.

On Dec. 24, 1892, the president of defendant bank called upon plaintiff bank and inquired as to said check, and when it was paid and whether it was good, and thereupon the cashier of plaintiff bank produced the check, and the cashier and the president of defendant bank called on that day upon G. Dice & Co., the alleged drawers of the check, and were informed by them that the signature of the drawers of the check was forged. This was the first information or knowledge plaintiff had of the forgery, and immediately and on Dec. 24, 1892, plaintiff demanded repayment of the money from defendant bank, and offered to return to it said check. This demand and offer were renewed Dec. 27, 1892, and to each the defendant bank made no definite reply, saying it would answer later. On Thursday, Jan. 5, 1893, defendant bank refused to repay said money or any part thereof.

The affidavit of defence averred that " plaintiff bank was negligent in making payment of said check when, as alleged, the signature of the drawer thereof, a depositor in plaintiff bank, was forged and counterfeited ; and that said plaintiff bank was further negligent in not giving due and timely notice of the forgery of said check, and that said notice, so as aforesaid given, was not within a reasonable and proper time ; and that by reason of the said negligence and laches on the part of said plaintiff bank the said plaintiff is not entitled to recover the

amount of said check or any part thereof from the defendant bank." The affidavit further stated that Gutman & Howard deposited $1,957 with defendants on Dec. 17, 1892, which included the forged check, and that they drew out $1,800 on Dec. 19, 1892.

Rule for judgment absolute. Defendant appealed.

*Error assigned* was above order.

*Thomas Patterson* and *P. C. Knox, James H. Reed* and *E. Z. Smith* with them, for appellant.—Prior to the act of April 5, 1849, § 10, P. L. 426, an action could not be maintained by a bank which paid money upon the forged signature of its depositor, for the reason that the bank was bound to know the signature of its customer, and therefore was more in fault than the party who received the same: Levy v. U. S. Bank, 1 Bin. 27.

This act has been construed in the case of Tradesmen's Bank v. Third National Bank, 66 Pa. 435, and Corn Exchange Bank v. Bank of Republic, 78 Pa. 233, to sustain an action by a bank which pays a check upon which the signature of its depositor is forged against the party presenting the same.

The act of 1849, allowing the bank of the depositor to ignore precautions as to verification of his signature, should be strictly construed, and if the bank so paying desires to avail itself of that act it should show prompt notice of the dishonor of the bill or check: Smith v. Mercer, 6 Taunt. 76; Cocks v. Masterman, 9 B. & C. 902; Mather v. Lord Maidstone, 18 C. B. 295; U. S. v. Clinton Bank, 28 Fed. R. 357; Byles on Bills, Wood's ed. 493; 2 Dan. Neg. Inst. 1371–2; Rick v. Kelly, 30 Pa. 527; Price v. Neal, 3 Burrows, 1354; Chambers v. Bank, 78 Pa. 205.

*Johns McCleave, D. T. Watson* with him, for appellee.—This case is ruled by Tradesmen's Bank v. Third Nat. Bank, 66 Pa. 435, and Corn Exchange Bank v. Bank, 78 Pa. 233.

OPINION BY MR. JUSTICE MITCHELL, December 30, 1893:

The argument of the learned counsel for the plaintiff meets the exigency of his case courageously, and stands squarely on the proposition that " the effect of the act (of April 5, 1849, P. L. 426) is undoubtedly to declare that there is no legal duty imposed upon the payer towards the holder of the check to know

the genuineness of the signature, whether it be the signature of the depositor or of some other party. And there being no such legal duty of course the payer cannot be guilty of negligence vesting any right against him in the holder." There can be no question that this is the necessary result of the construction contended for that the act abrogates all the rules of the common law relative to the payment of forged commercial paper. There is no logical stopping place short of such proposition. A bank therefore may pay a check or certify it as good, no matter how negligently, and the holder may on the faith of such action part with his goods or his land, and yet have no claim on the bank, or if he has been paid may be liable to refund the money. Still more, any man may, no matter how carelessly, pay a note purporting to bear his own signature, lay it away, and yet at any time within six years bring suit and recover back the money on the ground that the signature was a forgery. The disastrous consequences of the introduction of such a rule into the law of commercial paper, a law founded throughout the civilized world on the utmost promptness, diligence and good faith, should warn us to look closely into the true intent of a statute, before pronouncing that the legislature meant it to have such effect.

The act of 1849 is an omnibus act made up of the most heterogeneous materials. Sections seven to eleven inclusive are the only ones having any relation to the present subject, and they provide that no defense for want of proper and timely demand of payment or acceptance, or proper and timely protest for, or notice of nonacceptance or nonpayment, shall avail unless the proper place shall be distinctly set forth on the instrument; that when such place is omitted demand and notice may be made at any time before suit; and the instruments shall be held payable, protestable etc. at the place where they are dated, and that all bills, drafts etc. drawn in the state but payable out of it, with added exchange, or with " in current funds or such like qualifications superadded," shall be negotiable. Section ten, with which we are particularly concerned, provides for the recovery of money paid on forged signatures whether of drawers, acceptors or indorsers. In these sections, thus briefly summarized, there is nothing indicative of an intent to revolutionize the law merchant with regard to negotiable paper, but rather

to relieve against some hardships in practice which that law gave rise to. The strictness of demand and notice, which was easily complied with when transactions by bills and checks were comparatively few and the parties known to each other, became often of great difficulty in the extended business of modern times. So undesirable however was even this departure from the general commercial law found to be, that sections 7, 8 and 9, as to demand and notice, were repealed, after only two years experience, by the act of April 8, 1851, P. L. 398.

At common law acceptance of a bill was an admission of the drawer's signature, and the acceptor having thus given it currency could not set up that it was a forgery, Byles on Bills, 199 ; and payment of a forged check or bill could only be recovered back by giving notice on the same day: Id. 230. But even with prompt notice any fault or negligence of the party paying would prevent his recovery, and it has been held, from Lord MANSFIELD down, that an acceptor is bound to know the handwriting of the drawer, and that it is rather by his fault or negligence than by a mistake, if he pays on a forged signature. Id. 334. So strictly was this rule held with regard to a bank that in our own case of Levy v. Bank of U. S., 1 Bin. 27, the mere entry of the check as cash in a depositor's book was held to be equivalent to payment and to make the bank liable to the depositor for the amount, though the forgery was discovered and notice given to the depositor the same day, and there was no proof that the depositor had in the meantime lost anything or been prejudiced in any way by the bank's action. SHIPPEN, C. J., said "the acceptor is presumed to know the drawer's handwriting, and by his acceptance *to take this knowledge upon himself.*" The act of paying was thus held to be a conclusive estoppel without reference to any questions of negligence or delay or consequent loss to the other party. This was the kind of hardship which the act of 1849 was intended to remedy, and this is the extent of its operation in regard to a bank or other drawee paying on a forged signature of the drawer. The mere fact of payment is no longer, eo instanti and of itself, a bar to recovery of the money, but the principles of the commercial law are still applicable, and there is still the same necessity as before, for care, diligence and proper notice under the settled rules of the law of negotiable paper.

Such has been the construction of the act heretofore. Thus in Roth v. Crissy, 30 Pa. 145, and Rick v. Kelly, Id. 527, it was held that notice of the forgery within reasonable time, and an offer to return the note, are necessary to enable the party paying it to recover. In the former case the court below charged the jury that the plaintiff was bound to pursue his remedy with due diligence, and this was affirmed. In Rick v. Kelly it is said that the act of 1849 really accomplished little, as for the most part it was only declaratory of the former law. And in Chambers v. Union Nat. Bank, 78 Pa. 205, the necessity of diligence was admitted, though a delay of sixteen days in the discovery of the forgery was held to be excused by the circumstances, notice having been given immediately on the discovery.

The two cases specially relied on by appellee are not in conflict with this view of the statute. They are sustainable on their own facts, and what is said in them must be read with reference to the facts. In Tradesmen's Nat. Bank v. Third Nat. Bank, 66 Pa. 435, the defendant had collected the money as agent for another bank, and had credited it in the other's account. Under Levy v. Bank, this would have been equivalent to actual payment, and would have fixed the defendant's liability to its principal, but it was held that the act of 1849 now prevented the mere book entry from being conclusive, and as the defendant could pay the money back to the plaintiff without loss to itself, it was bound to do so. But in so holding this court said, " the money received is in the hands of defendants, and we are not called upon to decide what would have been their situation if it had been actually paid over by them." In Corn Exchange Nat. Bank v. Nat. Bank of Republic, 78 Pa. 233, the court below had charged that " under the act of 1849 the plaintiff is entitled to recover unless there has been negligence on its part, and through that negligence the defendant has been put in a position to lose by paying this money to plaintiff." The judgment was reversed, not because this charge was wrong, but because the evidence of negligence was not sufficient, PAXSON, J., saying that it was " not necessary to express an opinion as to how far negligence is a defence under the act, for the reason that there was not sufficient evidence upon this point to justify submitting it to the jury." It is

always a good defence that the loss complained of was the result of the complainant's own fault or neglect, and it would require a statute in very explicit terms to do away with so universal a rule of law, founded on so incontestable a principle of justice.

The result of the act of 1849 and the cases upon this subject is that the mere acceptance or payment of forged paper is no longer of itself a bar to the recovery of the money by the party paying, even though it be a bank or other drawee, nor is such party absolutely bound as at common law to discover and give notice of the forgery on the very day of payment. All that he need do in any case is to give notice promptly according to the circumstances and the usage of the business, and unless the position of the party receiving the money has been altered for the worse in the meantime, it would seem that the date of notice is not material. But on the other hand the statute does not dispense with the necessity of care and diligence on the part of the payer, nor exempt him from the consequences of his own negligence, if thereby loss would accrue to the other party.

In the present case the plaintiff received the check on Dec. 19th, paid it, entered it on its books and then apparently dismissed it from further attention. In all probability the forgery would not have been discovered until the deposit book of the supposed drawers, Dice & Co., came in for settlement, had not the defendant's officer on Dec. 24th called and started the investigation which resulted in the discovery. This must be pronounced a want of due diligence. The drawee is still presumed to know the drawer's signature and in the language of Chief Justice SHIPPEN, supra, " to take this knowledge upon himself," though the first slip is no longer conclusive against him. But having finished his examination, dismissed the subject from further attention, and allowed five days to elapse, during which the party receiving the money has paid it out in reliance upon the plaintiff's act, the latter cannot be allowed to say that he acted with due diligence and absence of negligence. As the facts are all clearly set out in the statement there is nothing to go to a jury.

Judgment reversed.