# United States National Bank of Portland, Appellant, *v.* Union National Bank of Philadelphia.

*Banks and banking—Forged check—Acceptance of check—Negligence—Notice—Estoppel—Acts of April 5, 1849, P. L. 424, and May 16, 1901, P. L. 194.*

1. The mere acceptance or payment of forged paper is not of itself a bar to the recovery of the money by the party paying, nor is such party absolutely bound as at common law to discover and give notice of the forgery on the very day of payment, but notice

must be given promptly according to the circumstances and the usage of the business, and, unless the position of the party receiving the money has been altered for the worse in the meantime, the date of notice is not material.

2. If the proceeds of a forged check are in the hands of a collecting bank as agent of the bank in which the check was deposited, or in the hands of the latter bank as principal, when notice is given of the forgery, there is no damage to either, and the paying bank's right to recoupment is complete, regardless of negligence.

3. No one may be allowed to retain the consideration received by him on a forged instrument, however innocent he may be, unless he can invoke the aid of the doctrine of estoppel.

*Banks and banking—Forged check—Principal and agent—Suit against agent—Defenses—Disclosed principal—Estoppel—Res adjudicata—Act of April 5, 1849, P. L. 424.*

4. An agent should not be sued when there is a disclosed principal known as such at the inception of the transaction.

5. Where a statute gives a right of action against the holder of a forged check, whether agent or principal, a collecting bank is liable in a suit against it by the paying or drawee bank, and in such suit the collecting agent bank may set up every defense which its principal might have arising out of the transaction in question; and when the principal knows of the action, the right and duty of such defense rests on both alike.

6. The collecting bank may show in defense, by way of estoppel, that the drawee bank had not used due diligence in discovering the forgery and notifying the bank in which the check had been deposited as the collecting bank, and that the depository bank had actually paid out the money or checks equivalent to the deposit, and would suffer if compelled to refund to the drawee bank.

7. If the collecting bank or its principal failed to assert such defense, or to assert it properly, the depository bank principal, in a subsequent affirmative suit against the drawee to recover the amount of the judgment against its agent which it had been compelled to pay, cannot take advantage of what was, in the first suit, a negative defense, and predicate a right of action on what would have been a complete defense in that suit.

8. Where the issues necessary to a determination of the governing point, are to be adjudicated, matters appropriate to the trial, either in affirmance of the right, or in defense of the action, which may then be properly considered, must be presented and passed upon in that case.

9. While there may be no privity of estate between a principal and agent, where an agent defends on his principal's title, or is

within the scope of the authority conferred on him, or if the principal was represented, or should have been by notice or knowledge of the litigation, or actually conducted the suit, though not a party of record, the principal is concluded by the judgment, and it may be used as evidence for or against him in subsequent actions.

*Principal and agent — Undisclosed principal — Concealment of agency—Banks and banking—Collection—Estoppel—Custom.*

10. An agent who conceals the fact of his agency and contracts as an ostensible principal, is liable as though he were such.

11. A bank to which a draft is endorsed and sent for the purpose of collecting it as agent of the endorser, and which transacts the business without disclosing its agency, may be regarded and charged as principal by those with whom it thus deals; and it is no answer that it is the uniform custom of banks to transact such business without disclosing their agency.

12. A collecting bank as an undisclosed agent, may defend upon the ground of estoppel by negligence as its principal may defend, but, if it appears that the money is still in its hands, it will not be permitted to keep it, notwithstanding the negligence of the payer.

Argued March 8, 1920. Appeal, No. 27, Jan. T., 1919, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1916, No. 3644, on judgment for defendant n. o. v. in case of United States National Bank of Portland v. Union National Bank of Philadelphia. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Trespass for loss of amount of check alleged to be due to defendant's negligence in failing to give proper notice that check had been forged. Before FINLETTER, J.

The opinion of the Supreme Court states the facts.

The check and its endorsements were in the following form:

EVERETT BANK
Everett, Pa. Nov. 2, 1911 No. 7089

Pay to the order of O. S. Snyder $3000 00/
Three thousand Dollars
To Union National Bank Philadelphia, Pa.

Not over three thousand $3000$

G. W. DERRICK
Cashier.

Endorsed—O. S. Snyder E. Leonard L. Orville Wilcoxon

Pay to the order of any bank, banker or trust Co., all prior endorsements guaranteed Nov. 15, 1911. The United States National Bank 24-11 Portland, Ore. 24-11 R. W. Schmeer, Cashier (Received payment Nov. 20 1911 Through the Clearing House).

Verdict for plaintiff for $2,168.41. Subsequently the court entered judgment for defendant n. o. v.

*Error assigned* was entry of judgment for defendant n. o. v.

*George Douglas Hay, B. Gordon Bromley* and *Thomas DeWitt Cuyler,* for appellant.—After presentation of the check and payment to the Franklin Bank agent, the Union Bank, defendant, owed a legal duty to the United States Bank, holder for value, to discover the forgery and notify the Franklin Bank within a reasonable time. The verdict of the jury is conclusive of defendant's breach of duty and judgment should be reversed: Rick v. Kelly, 30 Pa. 527; McNeely Co. v. Bank of North America, 221 Pa. 588; First Nat. Bank v. Whitman, 94 U. S. 343; Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375.

In Pennsylvania the drawee of a check is under a legal duty to the holder for value to notify of forgery within reasonable time: Westinghouse E. & Mfg. Co. v. Wilson, 63 Pa. Superior Ct. 294.

The Union Bank is estopped of record to deny liability to the United States Bank: Garrard v. Haddan, 67 Pa. 82.

The principle that the drawee of a check is presumed to know its depositor's signature governs the facts of this case, and, as applied, sustains the verdict of the jury notwithstanding sections 65 and 66 of the Negotiable Instruments Act: Nat. Bank of Rolla v. First Nat. Bank of Salem, 141 Mo. App. 719; Smith v. Bayer, 79 Pac.

497; First Nat. Bank of Graham v. Weitzel, 239 Fed. 497.

Even assuming that plaintiff's and its agent's endorsements were not restrictive, but general, by the great weight of authority both at common law and under sections 65-66 of the Negotiable Instruments Act the endorser of a check negotiated by delivery or by qualified or general endorsement does not warrant the genuineness of the maker's signature to the drawee but only to subsequent holders in due course: Weakly v. Bell, 9 Watts 273; McConeghy v. Kirk, 68 Pa. 200; Chambers v. Union Nat. Bank, 78 Pa. 205; Meyer v. Richards, 163 U. S. 385; Flynn v. Allen, 57 Pa. 482; Swanzey v. Parker, 50 Pa. 441; Judge v. West Phila. Title & Trust Co., 68 Pa. Superior Ct. 310.

The great weight of authority holds that endorsers of checks presented for payment do not, by virtue of sections 65 or 66 of the Negotiable Instruments Act, warrant to the drawee bank the genuineness of its depositor's signature.

Assuming that the endorsement of plaintiff and its agent, the Franklin Bank, are but qualified or general in their character, they contained no warranty to defendant of the genuineness of its depositor's signature either at common law, or under sections 65 and 66 of the Negotiable Instruments Act, which are inapplicable: Commercial & Savings Bank Co. v. Citizens Nat. Bank, 120 N. E. 675; Bank of Utica v. McKinster, 9 Wendell (N. Y.) 46.

*Joseph J. Brown*, with him *Henry P. Brown*, for appellee.—It would be unreasonable and contrary to the policy of the law to allow the United States Bank to again litigate, in an action brought by it against the Union Bank, issues which have been determined in the prior suit between the Franklin Bank and the Union Bank.

The Union Bank owed no legal duty to the United States Bank. Nor was any duty owed by the Union Bank, the violation of which would give rise to any cause of action against it.

Payment by a drawee of a forged check does not discharge the instrument: National Bank of Commerce v. First Nat. Bank of Corveta, 152 Pac. 596; Judge v. West Phila. T. & T. Co., 68 Pa. Superior Ct. 310; Young's Est., 234 Pa. 287.

If the agency of the person receiving the payment is undisclosed, he may be regarded and charged as the actual principal by those with whom he deals.

If the agency of the person receiving the payment is disclosed, he need not repay if he can prove an estoppel. In addition and upon principles of agency, having no reference to estoppel, he is not liable if, before notice of the forgery, he has paid over the money to his principal.

When recovery is sought against an agent, whether disclosed or undisclosed, he may, in accordance with established principles of agency or set-off, take advantage of any rights which his principal may have arising out of the transaction in question: Elwell v. Skiddy, 77 N. Y. 282, 291.


OPINION BY MR. JUSTICE KEPHART, June 26, 1920:

November 15, 1911, one Wilcoxon deposited in the United States National Bank of Portland, Oregon, a check for $3,000, purporting to have been issued by the Everett Bank, of Everett, Pennsylvania, and signed by the cashier. It was drawn on defendant, the Union National Bank of Philadelphia, the representative of the Everett Bank in that city. The United States Bank credited Wilcoxon's account with the amount of the check, endorsed it and forwarded it to its representative, the Franklin National Bank, of Philadelphia, for collection and credit. The check was received by letter by the latter bank on the 20th of November, 1911, was presented to the Union Bank through the clearing-house and

paid the same day. The check was forged. The Union Bank filed it away until November 29, 1911, when it was forwarded to the Everett Bank, which received it on the 30th of November, 1911. The latter discovered the forgery December 5, 1911, and notified the Union Bank. The following day this bank notified the Franklin Bank, which immediately wired the United States Bank of Oregon. In the meantime, however, and after payment of the check by defendant, the United States Bank honored Wilcoxon on his checks up until December 2, 1911, when there was a balance of $458.80 remaining. One of the payments was made November 22d, in amount over $2,500. The United States Bank promptly appropriated the balance of Wilcoxon's account and was able to recover other sums, leaving a balance unpaid of $1,594.45. Prior to this litigation, and after the Union Bank had learned of the forgery, it made demand on the Franklin Bank for the refunding of the $3,000; that bank declined to pay, whereupon the Union Bank instituted an action against the Franklin Bank and recovered a judgment in its favor which was affirmed by our court in Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375. The present action is a suit by the United States National Bank against the Union National Bank to recover the same sum of money the latter had secured from the Franklin, or a part of it.

Our inquiry, for a proper determination of the case in hand, naturally leads to a review of what was before this court on the former appeal (Union Nat. Bank v. Franklin Nat. Bank, supra), for it must be remembered that, under appellant's present view of the case, we permitted Union Bank to take funds of the United States Bank, in the hands of its agent, Franklin Bank, when in defense of that action Franklin Bank and United States Bank could have set up the negative defense of estoppel arising from the negligence of the Union Bank in not exercising proper diligence to discover the forgery and notify the agent, Franklin, or the principal,

United States, so they would not change their positions for the worse; and in the present case the United States Bank bases its right of action, and it is entirely dependent, on showing this identical negligence.

A proper study of the case of Union against Franklin Bank gives no warrant for the statement that the present action is but the logical sequence of what we there decided. This court, in that case, applied nothing more than what was considered as the controlling principles of law to the facts presented under the theory upon which the case was tried. It enunciated no new doctrine, nor did it promulgate any new theory of negligence, or right of action, nor invent any duties not heretofore generally known to be well-grounded in law. We will assume, for the purpose of our primary discussion of this case, Union Bank was negligent in not discovering the forgery and notifying the Franklin Bank, the agent; that Franklin Bank was an agent for collection, and the endorsement, "Pay to the order of any bank, banker, or trust company, all prior endorsements guaranteed: The United States National Bank of Portland, Oregon, R. W. Schmeer, Cashier," was a restrictive endorsement and served to notify the Union Bank that it was dealing with an agent. We need not discuss this latter principle at length at this time. When the Union Bank attempted recoupment from the Franklin Bank in the first trial, whether it was under the Negotiable Instruments Act of this State, or the Act of 1849, its right was not an absolute one. It was governed and controlled by legal principles well stated by Mr. Justice MITCHELL in Iron City Bank v. Fort Pitt Nat. Bank, 159 Pa. 46, 52: "The result of the Act of 1849 and the cases upon this subject is that the mere acceptance or payment of forged paper is no longer of itself a bar to the recovery of the money by the party paying, even though it be a bank or other drawee, nor is such party absolutely bound as at common law to discover and give notice of the forgery on the very day of payment. All

that he need do in any case is to give notice promptly according to the circumstances and usage of the business, and unless the position of the party receiving the money has been altered for the worse in the meantime, it would seem that the date of notice is not material. But on the other hand the statute does not dispense with the necessity of care and diligence on the part of the payer, nor exempt him from the consequence of his own negligence, if thereby loss would accrue to the other party." If the proceeds of the forged instrument were in the hands of the agent, or the principal, at the time notice was given of the forgery, there was no damage and the right of recoupment was complete, regardless of negligence. This is an elementary principal of law. How can one who has in his pocket, innocently it may be, money which he does not own and which was placed there as the result of fraud, theft, or the like, complain if he is compelled to return the money? He suffers no damage; and if Franklin Bank had this money, or United States Bank had not paid it out, how could it be contended at that time that United States Bank suffered any damages and had a right of action against the Union Bank if Franklin paid? "There is no stronger or better established principle of law or public policy than that which holds that no one shall be allowed to retain the consideration received by him on a forged instrument, however innocent he may be, unless he can invoke the aid of the doctrine of estoppel": Welch v. Goodwin, 123 Mass. 71. It is true, as a general principle, an agent should not be sued when there is a disclosed principal known as such at the inception of the transaction: Beeson v. Lang, 85 Pa. 197, 201; Roberts v. Austin, 5 Wh. 313, 315; Campbell v. Baker, 2 Watts 83; but here the Act of 1849 gives a right of action against the holder of a forged check, whether agent or principal, and does not destroy the common law identity of the agent governed by the legal principles applicable to agents, save only as the Act of 1849 authorizes suit to be brought against an agent. With the Act

of 1849 in view, the agency is accepted by the bank and, though liable, under the act, as agent, nevertheless every defense the principal might have, arising out of the transaction in question, can be taken advantage of by the agent: Elwell v. Skiddy, 77 N. Y. 282, 291; and where, as here, the principal knows of the action, the right and duty of presenting such defense rests on both alike. This right appertains to the agent without consent of the principal; therefore, when Union Bank sued Franklin Bank, it was competent for the latter bank, representing United States Bank, to show by way of estoppel that the Union Bank had not used due diligence in discovering the forgery and notifying the Franklin Bank, or the United States Bank, and that the latter bank had actually paid out the money (or the checks equivalent to the deposit) and would suffer if it were now compelled to refund. The principal had changed its position for the worse. If the proceeds of the forged check were in the hands of either principal or agent at the time notice was given to the United States Bank, the Union Bank's right of recoupment was complete at common law against the agent, negligence or no negligence: Huffcut on Agency (2d ed.), par. 204; Meechem on Agency (2d ed.), par. 1432; and, if the agent, or its principal, failed to assert as a defense, the legal principals above mentioned or to assert them properly, it cannot, in a subsequent affirmative action, take advantage of what was there a negative defense, and predicate a right of action on what would have been a complete defense in that suit. Where the issues, necessary to a determination of the governing point, are to be adjudicated, matters appropriate to the trial, either in affirmance of the right or in defense of the action, which may be then properly considered, must be presented and passed upon in that case. The formal judicial determination of the governing point as then presented is conclusive between the parties and those legally bound thereby, and all facts relative to the matter at issue, which were there passed upon,

or which could have been passed upon, to sustain or defeat the claim, may be said to be judicially ascertained or determined.  In such case res adjudicata is a bar to subsequent litigation between the same parties over the same subject-matter (see State Hospital for Criminal Insane v. Consolidated Water Supply Co., 267 Pa. 29, opinion by MOSCHZISKER, J., filed April 12, 1920) ; and in this case would bind the principal who knew of and had an opportunity to defend the action.  While there may be no privity of estate between the principal and agent, where an agent defends on his principal's title (in this case the right to retain the funds where the defendant's position has been altered for the worse), or is acting within the scope of the authority conferred on him, or if the principal was represented, or should have been by notice or knowledge of the litigation, or actually conducted the suit, though not a party of record, the principal is concluded by the judgment, and it may be used as evidence for or against him in subsequent actions: 23 Cyc. 1245, 1265; 2 Black on Judgments (2d ed.), sec. 578; 24 A. & E. Enc. of Law 751.

When Union Bank v. Franklin Bank, was on trial, the Franklin Bank limited its defense to antagonizing the Union's claim as to the principal contention there asserted, when it confined its effort to showing it did not have the proceeds of the forged check in its possession, and would be prejudiced in that it could not protect itself against the United States Bank if a recovery was had.

When Union Bank demanded return of the proceeds of the forged check, from Franklin Bank, this bank notified United States Bank, plaintiff in the present action.  Franklin was advised liability was denied, accompanied by the assertion: "Payment by a paying bank was made at the paying bank's peril." This was followed by a request for specific instructions, as Union insisted on payment and United States was assured that Franklin would do everything to protect their interests.

To this United States replied: "We do not wish you to pay and are quite willing to let matters take their course." It was then notified by Franklin the matter had been referred to counsel, naming them, with a full statement in relation to the matter. The evidence of the officers of United States was submitted at the first trial and they were advised of the judgment against Franklin, and that the account of United States would be charged with the amount of the draft and cost of suit. Franklin was requested not to so charge at this time as it might prejudice future action in the case, saying: "It is our intention and wish to have this case appealed to the Supreme Court of the United States and, of course, if the courts of Pennsylvania are not reversed, we naturally will have to reimburse you with the amount of the draft, with interest to the date of payment." The United States has since paid the amount of the judgment. Counsel who represented Franklin Bank, agent, at the first trial, represents United States in the present suit.

There is no question United States Bank took part in the trial against Franklin Bank and the former institution does not attempt in a single utterance to deny it. The entire theory of Union Bank in that case was that Franklin Bank had not changed its position for the worse, and it had the money. It was immaterial from its standpoint whether that bank was principal or agent; the funds derived from the forged check had not been paid out and consequently recoupment should be had regardless of negligence. The case was tried along these lines and Franklin endeavored to meet this issue, evidently with the idea it was the main point in the case. Repeatedly we find this assertion as the principal legal proposition, "The Franklin Bank having paid the United States Bank, which in turn paid its depositor, Wilcoxon, the Franklin Bank was not in a position to protect itself as against the United States Bank," appearing in that and other forms from the beginning to the end of the dis-

cussion. From a careful analysis of defendant's points there submitted, upon which the legal position of the case was made to rest, we find none, based upon the controlling legal principles governing all of the evidence,— which assumed that the United States had actually changed its position for the worse, in that it had paid out the money, after a reasonable time had elapsed, within which the Union Bank should have discovered the forgery and notified the United States, or its agent. Had this proposition been squarely submitted, no doubt Union would have raised the question as to whether the first payment of $2531 by the United States Bank to Wilcoxon, made on November 22d, was to be counted against the proceeds of the forged check, it having been paid within the time normally allowed banks situated as these were, to discover the forgery; it might have been advantageous to keep clear of this position, for, though the Union Bank did notify the Franklin Bank on the same day, that bank's advice of credit to the United States Bank was not received until the 24th of November, 1911, two days after the $2531 was paid. It was not upon the strength of the advice of credit of the forged check that $2531 was paid to Wilcoxon, and in strict justice Union's negligence did not enter into it. To this extent they had not changed their position for the worse upon anything Union had done, and their account was then short considerably more than half of the forged check.

Of course, on Union's theory of the case, it was only necessary to show that Franklin Bank had money in its hands belonging to the United States Bank; but, notwithstanding Union's theory, Franklin, as agent of the United States Bank, was at liberty to make any defense the latter could have made to the same extent as if the action had been brought against the United States Bank; but inasmuch as the question of estoppel was not presented for the court's determination in the first suit,

when it could and should have been, it cannot, as we said before, now be asserted.

Had the Franklin Bank defended in that case on the ground that Union's negligence not only had a tendency to prejudice their right of recoupment from the United States Bank, but that their principal, the United States Bank, would be injured by permitting a recovery because it had actually parted with its money to the depositor and had changed its position for the worse, the first case would have assumed a different aspect; but instead, the defense interposed was that, by reason of this negligence, the Franklin Bank would be prejudiced in that it was not in a position to protect itself as against the United States Bank. How could this be possible when they had at all times about ten times the amount of the proceeds of the forged check in their hands; and, inasmuch as they were the agent, acting under instructions from their principal, in no event or in no sense could they be prejudiced.

Defendant did not assert the defense it was entitled to make and which it could have asserted if it had so desired and could have made it material: State Hospital for the Criminal Insane v. Water Co., supra. It is true that at the first trial evidence was submitted tending to show that the Portland Bank had handled the paper, and the time wherein the payments were made to Wilcoxon on account of his deposit. Whether this evidence was introduced for the purpose of showing negligence of the Union Bank in connection with the contention that Franklin could not protect itself, as it claims, can only be discovered from the legal position assumed in that case. The case was dealt with here and in the court below on the theory upon which counsel tried it. Under the principles of law which we have here enumerated, the United States Bank having had notice of the action and an opportunity to defend, the judgment against Franklin, agent, concluded the principal, the United States Bank.

In addition to claims in the first case to which we have made reference, Franklin took the position that it was in a sense an undisclosed agent, inquiring what relationship existed between the United States Bank and the Union Bank. It now states: "As there was nothing on the check to clearly indicate that the United States Bank held the title, the fixed relationship established was that of an agent for an undisclosed principal to a third party. It was clear therefore to the minds of the officials of the defendant after presentation, [there was a] possibility that the United States Bank might be the real party in interest. It had no right to presume ownership in the Franklin Bank and lessen its vigilance, but was bound to receive the paper with the possibility well within its contemplation that the Franklin Bank was but an agent for the real holder......"; and further that Franklin in that proceeding was sued as a *principal debtor under the Act of 1849* for absolute liability for money in its hands.

On the question of undisclosed agency, the agent may be regarded and charged as the actual principal. "An agent who conceals the fact of his agency and contracts as the ostensible principal is liable in the same manner and to the same extent as though he were the real principal in interest": I Meechem on Agency (2d ed.), sec. 1410. "A bank to which a draft is endorsed and sent for the purpose of collecting it as agent of the endorser, and which transacts the business without disclosing its agency, may be regarded and charged as principal by those with whom it thus deals. It will be no answer that it is the uniform custom of banks to transact such business without disclosing their agency": 2 Richie on Banks and Banking, sec. 174, p. 1498. An undisclosed agent may defend upon the ground of estoppel by negligence, as the principal may defend; but, if it appears that the money is still in his hands, he will not be permitted to keep it, notwithstanding the negligence of the payer. There was some misunderstanding on this precise point and the doubt as to its exact relation with the United

States Bank occasioned the shifting defense, none of which reached the main question. As a disclosed agent, as we have said, the doctrine of estoppel could be invoked, and payment to his principal or any change of the agent to his disadvantage could be relied on; the agent may set up any defense of the principal. "An agent is liable to a third person in quasi contract under the following circumstances: Where the third party has paid money to the agent, as agent, from a mistake of fact, or upon a consideration which fails, and notice is given the agent before he pays the money over to his principal, or otherwise changes his legal position on the strength of such payment, the agent is liable to the third person. But if the agent has paid the money over to his principal, or has changed his legal position to his detriment upon the strength of the payment, he is not liable. If the agent has not acted as agent, but for an undisclosed principal, the case escapes the doctrines of agency and is treated like any case of payment made by mistake": Huffcut on Agency (2d ed.), sec. 204.

Having held, under the theory upon which the case was tried, that no estoppel was created by the facts in that case, it is inconceivable that the court will now, between the same parties, decide they created a cause of action. Having failed to take advantage of the defense that was open to them in the first trial, they cannot now use that defense as a substantive right on which to base an action. We, therefore, conclude that the plaintiff should have placed its entire case before the court when its agent, the Franklin National Bank, was sued; they were not precluded by the trial court from so doing in the first suit; the way was open to them, but they neglected to assert their right, or to properly assert it, and cannot now complain. It would be intolerable to permit courts to be made the vehicle to try over and over again mistaken ideas as to how cases should be tried.

We do not mention the fact of payment before the advice of credit was received as determining what would

be a reasonable time to discover the forgery; it is help-
ful in the decision of the case to know the extent of the
loss occasioned through the Union Bank's negligence.

The judgment of the court below is affirmed.