Pennsylvania Mut. Life Ins. Co. *v.* Real Estate-Land T. & Tr. Co. et al. (Corn Exchange Nat. Bank & Trust Co., Appellant.)

82

Argued October 10, 1934.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Carl W. Funk,* and with him *Philip Wallis,* of *Drinker, Biddle and Reath,* for appellant.

*John V. Lovitt,* of *Ballard, Spahr, Andrews and Ingersoll,* for appellee.

OPINION BY KELLER, J., February 1, 1935:

Pennsylvania Mutual Life Insurance Company, hereinafter called 'Insurance Company,' was a depositor of the Real Estate Land Title & Trust Company, hereinafter called 'Trust Company.' It drew four checks on the Trust Company to the order of four different payees in payment of claims on insurance policies. These checks came into the hands of one of its employees named Walsh, who forged the payees' endorsements and deposited them with the Westmont National Bank of Westmont, N. J. This bank in order to collect them from the drawee bank, sent them to the Corn Exchange National Bank & Trust Company, hereinafter called 'Corn Exchange Bank,' with endorsements expressly guaranteeing prior endorsements. The Corn Exchange Bank, in turn, endorsed the checks, guaranteeing all prior endorsements, and collected them from the Trust Company through the Philadelphia Clearing House.

The forgeries were discovered by the Insurance Company and on November 29, 1930 Walsh made a written confession. On December 1, 1930 (November 30 being Sunday) notice was given by the Insurance Company to the Trust Company, which asked the former to get affidavits from the payees of the checks. On December 2, 1930 Walsh was arrested for forgery and on December 17, 1930 was held for court, and subsequently

convicted. On December 16 or 17, 1930, the affidavits of the payees of the checks relative to the forgeries were delivered to the Trust Company and on December 17, 1930 the Trust Company notified the Corn Exchange Bank by letter of the claim of the Insurance Company that the signatures of the payees had been forged. This was the first notice given by the Trust Company to the Corn Exchange Bank in the matter. Between December 1, and December 18 Westmont Bank had continuously on deposit with Corn Exchange Bank an amount in excess of the sum of the four checks. It does not appear in the case whether or not Westmont Bank, between December 1 and December 18, had any funds standing to the credit of the forger, Walsh, out of which it might recoup itself.

The Insurance Company brought this action in assumpsit against the Trust Company to recover the amount of the four checks paid on the forged endorsements. By scire facias proceedings under the Act of April 10, 1929, P. L. 479, the Trust Company had the Corn Exchange Bank brought in as an additional defendant, alleged to be liable over to it for the cause of action declared on. The right of the plaintiff to recover from the original defendant was not seriously contested. The real issue was the right of the Trust Company to recover over against the Corn Exchange Bank, the additional defendant. A verdict was rendered in favor of the Insurance Company against the Trust Company and in favor of the Trust Company against the Corn Exchange Bank. A new trial was granted as to the latter verdict alone; and on the second trial the only issue involved was the right of the Trust Company to recover over against the Corn Exchange Bank. The trial court directed a verdict in favor of the original defendant, the Trust Company, and against the additional defendant, the Corn Exchange Bank, refusing the latter's point for binding

instructions; and the court in banc subsequently dismissed the latter's rule for judgment non obstante veredicto. The Corn Exchange Bank has appealed.

It contends that the Trust Company's delay of sixteen days in notifying it of the forgeries precludes it from recovering against the Corn Exchange Bank, (1) because it was the duty of the Trust Company to give immediate notice, and (2) because the delay amounted to such negligence as to relieve the Corn Exchange Bank of liability. On this point the learned President Judge of the court below, in the opinion refusing judgment non obstante veredicto, said: "If the case were to turn on the promptness of notice to the Corn Exchange we would exempt the Corn Exchange from liability. The facts being undisputed we think it would be the function of the court to pass on the sufficiency of the notice. But there is another and in our opinion a controlling fact. It was stipulated by counsel 'that the Westmont National Bank (from whom the Corn Exchange had received the checks) had an account with Corn Exchange in which, from December 1 to December 18, 1930, the amount of funds of the Westmont National Bank in the Corn Exchange National Bank was in excess of the amount of checks.' It is then a fact that the additional defendant was not prejudiced by the delay because it had in its hands money of its principal, the Westmont Bank, out of which it could, and was bound to, reimburse the Trust Company."

In support of this conclusion the court cited the case of Iron City Bank v. Fort Pitt Bank, 159 Pa. 46, 28 A. 195, where Mr. Justice MITCHELL after referring to the Act of April 5, 1849, sec. 10, P. L. 424, p. 426, and its effect on the harsh rule of the common law, previously in force in this State, relative to the acceptance or payment of a bill by an acceptor or drawee where the signature of the drawer was forged, said: "The act of paying was thus held to be a conclusive estoppel

without reference to any questions of negligence or delay or consequent loss to the other party. This was the kind of hardship which the Act of 1849 was intended to remedy, and this is the extent of its operation in regard to a bank or other drawee paying on a *forged signature of the drawer*. The mere fact of payment is no longer, eo instanti and of itself, a bar to recovery of the money, but the principles of the commercial law are still applicable, and there is still the same necessity as before, for care, diligence and proper notice under the settled rules of the law of negotiable paper;'' and then further explained what was meant by this statement, as follows: ''The result of the Act of 1849 and the cases upon this subject is that the mere acceptance or payment of forged paper is no longer of itself a bar to the recovery of the money by the party paying, even though it be a bank or other drawee, nor is such party absolutely bound as at common law to discover and give notice of the forgery on the very day of payment. All that he need do in any case is to give notice promptly according to the circumstances and the usage of the business, and unless the position of the party receiving the money has been altered for the worse in the meantime, it would seem that the date of notice is not material. But on the other hand the statute does not dispense with the necessity of care and diligence on the part of the payer, nor exempt him from the consequences of his own negligence, if thereby loss would accrue to the other party.''

This was quoted with approval by Mr. Justice Kephart in United States Nat. Bank v. Union Nat. Bank, 268 Pa. 147, 155, 110 A. 792, who added: ''If the proceeds of the forged instrument were in the hands of the agent, or the principal, at the time notice was given of the forgery, there was no damage and the right of recoupment was complete, regardless of negligence.

This is an elementary principle of law. How can one who has in his pocket, innocently it may be, money which he does not own and which was placed there as the result of fraud, theft, or, the like, complain if he is compelled to return the money? He suffers no damage; and if Franklin Bank had this money, or United States Bank had not paid it out, how could it be contended at that time that United States Bank suffered any damages and had a right of action against the Union Bank if Franklin paid?"

It would seem, therefore, that if proper notice under the settled rules of negotiable paper is given by a bank which has paid a check drawn by one of its depositors, on a forged endorsement, it is "legally entitled to recover back from the person or persons previously holding or negotiating the same" [Act of 1849, supra] the amount so paid, irrespective of the effect on the latter; but if notice of such forgery is delayed beyond that usually applicable to negotiable paper, it may still recover back the money from the prior holders or negotiators "unless the position of the party receiving the money has been altered for the worse in the meantime." As was said by Mr. Justice MOSCHZISKER in Union Nat. Bank v. Franklin Nat. Bank, 249 Pa. 375, 383, 94 A. 1085, a case involving the same facts as in U. S. Nat. Bank v. Union Nat. Bank, supra, "If the one receiving the money could recoup himself therefrom without loss, the date of notice became immaterial."

The stipulation of counsel referred to in the lower court's opinion concedes that the Corn Exchange Bank had in its possession constantly between December 1 and December 18, when it received notice of the forgeries, funds of the Westmont Bank, from whom it received the checks for collection, much in excess of the sum of the forged checks; so that as far as the Corn Exchange Bank is concerned it could recoup it-

self without loss, and hence was not personally affected by the Trust Company's delay in giving notice of the forgeries.

But appellant contends that, because of this delay, it was incumbent on the Trust Company to show not only that the Corn Exchange Bank could recoup itself without loss, but also, as antecedent to its right to recover from the Corn Exchange Bank, that the Westmont Bank could likewise recoup itself from Walsh, the forger, without loss. We think the two cases cited above, Union Nat. Bank v. Franklin Nat. Bank, supra, and U. S. Nat. Bank v. Union Nat. Bank, supra, rule otherwise; that while it would have been a good defense on the part of the Corn Exchange Bank in this action to prove that the Westmont Bank was not, on and after the date notice of the forgeries was given it, in a position to recoup itself without loss from Walsh, the forger, the duty of showing that fact rested on it rather than on the Trust Company to prove the opposite; that when the Trust Company showed that the Corn Exchange Bank could make itself whole by charging the forged checks against the funds to the credit of the Westmont Bank, it was the duty of the last-named, if it wished to escape the primary liability, to furnish proof to the Corn Exchange Bank, and for that bank to show on the trial, that Walsh had in the meantime drawn out his account and had no funds to his credit against which it could charge the checks.

That was what the Supreme Court held in the cases just referred to.

In the case of Union Nat. Bank v. Franklin Nat. Bank, supra, suit was brought against the Franklin Bank by the Union Bank to recover the proceeds of a forged check drawn against one of its depositors which it had paid the Franklin Bank, as collecting agent for the United States National Bank of Portland. A verdict for the Union Bank against the col-

lecting bank was sustained, (although notice of the forgery was tardy) solely on the ground that the Franklin Bank still had, at the time of receiving such notice, money to the credit of its principal from which it could have paid back to the Union Bank the proceeds of the forged checks. It will be noted that the Union Bank was not required to prove as part of its case that the United States Bank, which had forwarded the check to the Franklin Bank for collection could likewise recoup itself against its own depositor, as the appellant asks us to hold here.

Subsequently the United States Bank brought suit against the Union Bank (268 Pa. 147) to recover the money which the Franklin Bank had been required to pay the latter and had charged against its account; and sought to show that its depositor, to whose account the proceeds of the forged check had been credited, had between the time it had received notice of the collection of the check by the Franklin Bank and the receipt of the notice of the forgery, drawn out all his money and closed the account. But the Supreme Court held that that defense should have been *presented on its behalf by the Franklin Bank* at the trial of the action against it by the Union Bank, Mr. Justice KEP-HART, speaking for the court, saying: "Therefore, when Union Bank sued Franklin Bank, it was competent for the latter bank, representing United States Bank, to show by way of estoppel that the Union Bank had not used due diligence in discovering the forgery and notifying the Franklin Bank, or the United States Bank, and that the latter bank had actually paid out the money (or the checks equivalent to the deposit) and would suffer if it were now compelled to refund. The principal had changed its position for the worse. If the proceeds of the forged check were in the hands of either principal or agent at the time notice was given to the United States Bank, the Union Bank's

right of recoupment was complete at common law against the agent, negligence or no negligence: Huffcut on Agency (2d ed.), par. 204; Meechem on Agency (2d ed.), par. 1432; and, if the agent, or its principal, failed to assert as a defense, the legal principles above mentioned or to assert them properly, it cannot, in a subsequent affirmative action, take advantage of what was then a negative defense, and predicate a right of action on what would have been a complete defense in that suit."

We do not think this is contrary to the decision of the Supreme Court in Union Nat. Bank v. Farmers & Mechanics Nat. Bank, 271 Pa. 107, 114 A. 506, on which the appellant relies. In that case the Union Bank between December 17, 1917 and January 31, 1918 paid fourteen checks drawn against the account of one of its depositors, Wapner & Rushansky, whose signature to the checks had been forged by their bookkeeper, I. Leiberman. Leiberman asked a friend of his, Lawrence Hershman, to cash the checks, and the latter deposited them in his account with the Commonwealth Title Insurance & Trust Company, which in turn endorsed and delivered some of them to the Farmers & Mechanics Bank, which collected them through the Clearing House. The Supreme Court reversed the lower court which had directed a verdict for the plaintiff, holding that a bank is still *bound to know the signatures of its depositors,* and to use due care and diligence in discovering forgeries of the signatures and in giving notice to former innocent holders; and if it fails in either of these respects, and *injury results to the former innocent holders* it cannot recover back the amount of the forged checks. While it appeared in that case that during all the time between the payment of the checks and the notice of the forgeries, "the balance due by defendant [Farmers & Mechanics Bank] to the Trust Company [Common-

wealth Trust Company] was far in excess of the total amount of the checks," it also appeared in evidence that "neither defendant, the trust company, nor Hershman, either then or thereafter, had any money belonging to Leiberman, who was insolvent and in prison, and who subsequently was indicted, tried, convicted and sentenced for the forgeries" (p. 110).

Had it appeared in this case that the Westmont Bank had at the time it received notice of the forgeries of the payees' signatures no money or property in its hands belonging to Walsh, the forger, the court below would, no doubt, under the authorities cited, have directed a verdict for the defendant. The negligence of the plaintiff in this case, unlike that of the plaintiff in Union Nat. Bank v. Farmers & Mechanics Nat. Bank, supra, was not in paying the checks, but in delaying to give notice of the forgeries. It was sufficient to relieve the prior *innocent* holders of the checks from any *loss resulting from that negligence,* and no recovery could be had against either the Corn Exchange Bank or the Westmont Bank, if the latter, at the time it received notice of the forgeries, had no funds or property in its hands belonging to the forger, Walsh. Knowing that the Corn Exchange Bank if compelled to pay the checks, could charge the amount so paid against the Westmont Bank's account, it was the duty of the latter to furnish proof to the former, for use on the trial, that Walsh had no funds or property in its possession when notice of the forgeries was received by it,—as was done in the case relied on by appellants—and that a recovery against Corn Exchange Bank would result in loss to it, an innocent former holder. If such loss resulted either to the defendant or Westmont Bank, the plaintiff could not recover.

We do not think the endorsement on the checks, 'Prior endorsements guaranteed' comes within the

Act of July 24, 1913, P. L. 971, which subjects every person making a written agreement "to answer for the default of another" to the liabilities of suretyship, unless the agreement contains in substance the words: "This is not intended to be a contract of suretyship." The endorsement did not purport to make the endorser signing it answer for the *default* of the prior endorsers, except in accordance with the law of negotiable instruments, and then only as an *endorser,* not as a *surety.* It did not purport to agree to pay the check except as it might be legally called upon to do so, as an endorser. The Act of 1913, supra, contains nothing within it to show an intention to change the well established law of negotiable instruments in this respect.

The assignments of error are overruled and the judgment is affirmed.